IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CARLOS RYERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. G-05-092 |
| v. | § | |
| | § | |
| CARLOS ROMERO DESCHAMPS, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This case arises out of an alleged tortious interference by Defendant with a legal services contract entered into between Plaintiff Carlos Ryerson ("Plaintiff") and a Mexican Union with whom Defendant was formerly affiliated.  Now before the Court is Defendant's Motion to Dismiss, which seeks dismissal based on lack of personal jurisdiction, *forum non conveniens*, and improper venue. For the reasons articulated below, Defendant's Motion is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.[1]

**I.  Background**

Plaintiff is a Houston attorney who was hired by the Petroleum Workers Union of the Republic of Mexico ("the Union") in 1990 to represent it in litigation then pending in Harris County District Court ("the Arriba Litigation").  During the litigation, Plaintiff agreed to defend the Union in any future claims relating to the Arriba Litigation.  In 1998, Plaintiff was personally hired by Enron

---

[1]The Court does not consider this Order worthy of publication.  Accordingly, it has not requested and does not authorize publication.

1

and was relegated to a peripheral role in the Arriba Litigation which was on appeal.  In 2000, Ryerson left the employ of Enron, and the Arriba Litigation subsequently heated up again.  In late 2003 or early 2004, Ruben Choreño, the Union representative with whom Plaintiff originally dealt, again asked Plaintiff to help with the Arriba Litigation.  Plaintiff began working on the case again, and a settlement was ultimately reached.  According to Plaintiff, the settlement agreement, for varied and personal reasons, was not in Defendant's best interest.  Defendant took the position that the settlement was invalid and that Plaintiff was not authorized to act on behalf of the Union.  According to Plaintiff, Defendant persuaded other Union officials to abandon the settlement agreement, which fell through, depriving Plaintiff of his agreed-upon fee.  It is Defendant's actions in causing the failure of the settlement agreement that form the basis of Plaintiff's tortious interference and fraud claims.

## II.  Personal Jurisdiction

### A.  Legal Standard

As a nonresident of Texas, Defendant is subject to personal jurisdiction in this District if he is amenable to service of process under Texas's long-arm statute and the exercise of personal jurisdiction is consistent with due process.  *See Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992).  Since the Texas long-arm statute reaches as far as the Constitution allows, there is a single inquiry into whether jurisdiction over Defendant is consistent with the Due Process Clause of the United States Constitution.  *See Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

Whether the exercise of personal jurisdiction over Defendant is consistent with the Due Process Clause requires a two-pronged inquiry.  First, the Court must conclude that Defendant has "minimum contacts" with the forum state.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66

2

S. Ct. 154, 158, 90 L. Ed. 95 (1945).  Second, the Court must determine that requiring Defendant to litigate in the forum does not offend "traditional notions of fair play and substantial justice."  *Id.*  The "minimum contacts" aspect of due process can be satisfied by finding either specific jurisdiction or general jurisdiction.  *See Wilson*, 20 F.3d at 647.  Contacts unrelated to the cause of action may confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial."  *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S. Ct. 1868, 1873, 80 L. Ed. 2d 404 (1984).  A defendant's limited contact with the forum state may support specific jurisdiction if it gives rise to the cause of action.  *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993).  Specific jurisdiction, the only type alleged by Plaintiff, is proper if (1) the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws," and (2) the controversy arises out of or is related to the defendant's contact with the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985); *see also Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990).  The burden is on Plaintiff to establish jurisdiction.  *See id.* at 785.

*B.  Analysis*

Plaintiff alleges the following facts to support the exercise of personal jurisdiction over Defendant: (1) Defendant sent an agent to Texas to fire Plaintiff as attorney for the Union, (2) Defendant directed others to communicate to Arriba's counsel that the settlement agreement was invalid, and (3) Defendant took "legal efforts" in Texas to invalidate the settlement.[2]  Plaintiff's

---

[2]Plaintiff does not state what "legal efforts" Plaintiff took in Texas to invalidate the settlement.  Accordingly, this statement is merely conclusory and will not be given substantial weight by the Court.

3

Response ultimately accuses Defendant of taking actions in Texas to interfere with a Texas contract.

These allegations, taken as true, are enough to support the exercise of personal jurisdiction over Defendant. Plaintiff focuses on several letters from Defendant. One letter, sent in late 2004, was from Defendant and required Plaintiff to clear all further action in the case with another attorney. A second letter from Defendant told Plaintiff that he no longer had authority to act on behalf of the Union. According to Plaintiff, Defendant was not authorized by the Union to send these communications. In addition, Plaintiff alleges that Defendant wrongfully persuaded Union officials to rescind the settlement agreement. The communications between Defendant and other Union officials necessarily occurred in Mexico, where Defendant and all other Union officials are residents.

In *Panda Brandywine Co. v. Potomac Electric Power*, 253 F.3d 865 (5th Cir. 2001), the Fifth Circuit found no personal jurisdiction over a Defendant where the contract allegedly interfered with was not governed by Texas law, was not to be performed in Texas, and was unrelated to Texas in any way other than the residence of the Plaintiff. Though Defendant cites *Panda Brandywine* as authority for its arguments, that case is factually distinct from the instant case. Here, performance of the contract was to be in Texas, and this case is more analogous to *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003), where the Court supported jurisdiction over a Defendant who interfered with a contract to be performed in Texas. "Although mere allegations of tortious interference with a forum resident's contractual rights are not sufficient to establish specific personal jurisdiction, it is clear that specific personal jurisdiction may be based on intentionally tortious conduct that is purposefully directed toward the forum state." *Id.* at 383. According to Plaintiff, Defendant intended to interfere with Plaintiff's contract and did so by making false statements in letters and through agents concerning Plaintiff's continuing relationship with the Union.

4

These actions are enough to establish minimum contacts with the State.

Having found sufficient minimum contacts, this Court must consider whether the exercise of personal jurisdiction would offend the traditional notions of fair play and substantial justice.  Though trial in Texas will no doubt be inconvenient for Defendant, a Mexican resident, it does not rise to the level of offensiveness.  In making this determination, the Court considers: "(1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 115, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).

In this case, only the first factor, which will be considered in more detail below weighs against the exercise of jurisdiction.  However, the remaining factors in this test make it clear that exercising personal jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.  The courts in this state have an interest in protecting the contracts of its practicing lawyers, therefore have an interest in this case.  The consideration of the interstate judicial system is lessened in this case, since there is no alternative state being proposed, but rather an alternative country–Mexico.  Consideration of the relative merits of pursuing this case in Mexico are addressed more fully below.

The Court notes that this case presents a very difficult and close question of law.  While the Court has done its best to apply the guidance of the Fifth Circuit as outlined in its previous decisions, it welcomes the advice of that higher Court, should the Parties choose to seek it.  Having said that, this Court finds that Defendant could have reasonably expected to be called into a Texas court, and

5

has sufficient minimum contacts with the State of Texas appropriate to confer jurisdiction on this Court.

### III.  *Forum Non Conveniens*

*A.  Legal Standard*

The doctrine of *forum non conveniens* derives from the proposition that "[i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722, 116 S. Ct. 1712, 1724, 135 L. Ed. 2d 1 (1996). Pursuant to this doctrine, a court may dismiss a case in favor of a foreign forum if the defendant establishes that the convenience of the parties and the court, coupled with the interests of justice, indicate that the lawsuit is better suited for adjudication elsewhere. *See Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001).

Federal courts employ a two-part analysis when applying the *forum non conveniens* doctrine in the international context. *See Piper Aircraft v. Reyno* 454 U.S. 235, 255-56, 102 S. Ct. 252, 265-66, 70 L. Ed. 2d 419 (1981).  The first step involves a determination of whether an adequate and available foreign forum exists. *See Sydow v. Acheson & Co.*, 81 F. Supp. 2d 758, 768 (S. D. Tex. 2000).  Next, if an adequate alternative forum is available, the court must decide whether "certain private and public interest factors weigh in favor of dismissal." *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001).  If the relevant private interest factors advocate dismissal, however, no inquiry into the public interest factors in needed. *See Baris v. Sulpicio Lines*, 932 F.2d 1540, 1550-51 (5th Cir. 1991).  While undertaking both steps of this analysis, courts must remain mindful that "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft*, 454 U.S. at 256, 102 S. Ct. at 266.  *See also Syndicate 420 at Lloyd's*

*London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986).

The private factors to be considered in a *forum non conveniens* analysis relate to the convenience of the parties, and include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses, possibility of viewing the premises, if such viewing would be appropriate to the action; other practical problems that make a trial of a case easy, expeditious, and inexpensive; enforceability of judgment; and whether the plaintiff has sought to vex, harass, or oppress the defendant. *See Karim,* 265 F.3d at 268 n.14 (citations omitted). The "public interest" factors include: administrative difficulties; reasonableness of imposing jury duty on the people of the community; holding the trial in the view of those affected; and the local interest in having localized controversies decided at home. *See id.*

B. *Analysis*

1. *Adequate Forum*

Defendant argues that Mexico presents an adequate alternative forum for the adjudication of this dispute and that Mexican law allows for the redress of the claims alleged by Plaintiff. An alternative forum is available to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be dismissed. *See Piper*, 454 U.S. at 254 n. 22, 102 S. Ct. at 265 n. 22 (citation omitted) ("Ordinarily, [the requirement] will be satisfied when the defendant is amenable to process in the other jurisdiction"). The alternative forum is adequate as long as the parties will be treated fairly and will not be deprived of all remedies there. *See Sydow*, 81 F. Supp. 2d at 768. *See also Piper*, 454 U.S. at 254 n. 22, 102 S. Ct. at 265 n. 22.

Plaintiff has not presented, and the Court is not aware of, any obstacles to justice within the

Mexican court system.  Accordingly, the Court finds that Mexico is an available and adequate forum for litigation of this matter.

    *2.  Private Interests*

The private interest factors in this case weigh heavily in favor of adjudicating it in Mexico. Any documentary evidence needed in the preparation and presentation of this case can be transferred between Mexico and Texas with relative ease, so that bears no burden on this *forum non conveniens* analysis.  However, the cost and ability of obtaining testimony and attendance of both willing and unwilling witnesses weighs substantially in favor of a Mexican adjudication.  Plaintiff's only argument on this issue is that he lives in Texas, so it would be more convenient for him to try the case here.  While that is undoubtedly true, it wholly ignores every other person relevant to the resolution of this case, all of whom are Mexican nationals.  These witnesses include Defendant and other Union representatives.  This Court cannot compel the attendance at trial or deposition of unwilling witnesses who live and work in Mexico.  Moreover, the cost of obtaining testimony from willing witnesses will be higher when all of those witnesses live in Mexico.  In fact, Defendant himself is currently prohibited from leaving Mexico.  Consideration of the availability of key witnesses clearly supports trial in Mexico.

This is currently a case against a Mexican national, and any judgment against him would have to be satisfied from his personal assets, which this Court presumes are located in Mexico.  This Court simply cannot enforce a judgment that would require seizure of assets located in a foreign country. The evaluation of the private factors relevant to this case, clearly shows that Mexico is a superior forum for the Parties' dispute.

    *3.  Public Interest*

8

Courts often turn to the interests of the public when considering an argument of *forum non conveniens*. However, since the private factors in this case weigh heavily in favor of dismissal, no further inquiry is necessary, and dismissal based on the doctrine of *forum non conveniens* is appropriate in this case. *See Baris*, 932 F.2d at 1550-51.

## IV.  Venue

It is unclear to this Court what connection this case has to this Division of the Southern District of Texas. Any connections this case has with the State of Texas are with Houston, and this case would more appropriately proceed there. While the Court is always flattered by the desires of Parties to litigate their disputes here, it is simply unable to hear cases which are not appropriately before it. Accordingly, should this case ever be before this Court again, it will be transferred to the Houston Division of this District.

## V.  Conclusion

The Court thanks both Parties for the excellent advocacy displayed in the well-prepared briefs submitted in connection with this Motion. It is always an honor, and frankly a lot of fun, to preside over cases involving attorneys of such high caliber. However, subjective preference aside, the Court finds that this case would more appropriately be litigated in either Mexico or Houston. Accordingly, Defendant's Motion to Dismiss is **GRANTED, CONDITIONED** on the willingness of Defendant to submit to the jurisdiction of the Mexican courts for any action Plaintiff commences in Mexico, based on these facts, within six months of the date of this Order**.** All claims asserted by Plaintiff in this action are **DISMISSED WITHOUT PREJUDICE**. A Final Judgment will be issued contemporaneously with this Order. All taxable costs, expenses and attorney's fees shall be borne by the Party incurring same.

9

**IT IS SO ORDERED**.

**DONE** this 13th day of January, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge